IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEVEN E. JOHNSON,　　　　　　　　　　　　No. 6:16-cv-01420-HZ

　　　　　　Plaintiff,　　　　　　　　　　　　　　OPINION & ORDER

　　v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security

　　　　　　Defendant.

Katherine L. Eitenmiller
Mark A. Manning
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, OR 97401

　　Attorneys for Plaintiff

//

1 - OPINION & ORDER

Billy J. Williams
Janice E. Hebert
U.S. Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Lars J. Nelson
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Steven Johnson brings this action for judicial review of the Commissioner's final decision denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). Because the Commissioner's decision was free of legal error and supported by substantial evidence in the record, it is affirmed and this case is dismissed.

## BACKGROUND

Plaintiff was born on July 16, 1969, and was forty-three years old on the date that his application for benefits was filed. Tr. 24.[1] Plaintiff has a high school education and no past relevant work experience. *Id.* Plaintiff filed his application for SSI on February 19, 2013, alleging a disability onset date of March 12, 2000. Tr. 10. His claim was initially denied on June 24, 2013, and on reconsideration on December 31, 2013. *Id.* An administrative hearing was held on January 28, 2015, before Administrative Law Judge ("ALJ") Elizabeth Watson. *Id.* Plaintiff appeared in person in North Bend and ALJ Watson presided over the hearing from Eugene by video. *Id.* ALJ Watson issued a written opinion denying Plaintiff's application on March 11,

---

[1] Citations to "Tr." refer to pages of the administrative record transcript, filed here as ECF 13.

2015. Tr. 25. The Appeals Council denied reconsideration of Plaintiff's application, making the ALJ's opinion the Commissioner's final decision that Plaintiff now challenges in this Court. Tr. 1–6.

Prior to filing Plaintiff's application currently before the Court, Plaintiff received benefits for a period of time. In March of 2000, Plaintiff's home was broken into and he was shot four times: three times in the body and once in the head. Tr. 430. As a result of the injuries that he suffered, Plaintiff received benefits from March 12, 2000, through September 22, 2009. Tr. 10. Plaintiff appealed the cessation of his benefits and on September 29, 2011, an ALJ denied that appeal. Tr. 106–16. Therefore "[a]ny discussion of the period prior to September 29, 2011, is for background purposes only and is not an implied reopening." Tr. 10.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in SGA since February 19, 2013. Tr. 12.

At step two, the ALJ determined that Plaintiff had the following severe impairments:

> history of gunshot wounds, post-concussion syndrome, headache, chronic rhino sinusitis, cervical degenerative disc disease, lumbar degenerative disc disease, De Quervain's tendonitis, right knee medical meniscus tear and bursitis, chronic obstructive pulmonary disease ("COPD"), posttraumatic stress disorder ("PTSD"), cognitive disorder, and affective disorder[.]

*Id.* The ALJ also determined that several of Plaintiff's impairments were not severe, including his: alcohol abuse; obesity; cannabis abuse; hypertension; left knee arthroscopy for a meniscus tear; and bilateral carpel tunnel syndrome. Tr. 13–14 Regarding Plaintiff's carpel tunnel

syndrome, the ALJ concluded that it was not severe for the required twelve-month period based on Plaintiff's history of improvement with conservative treatment, gaps in treatment history, denial of weakness or loss of functioning, positive strength and reflex test results, successful surgery, and the fact that some of the condition's symptoms were accounted for in his De Quervain's tendonitis diagnosis. Tr. 13.

At step three, the Commissioner found that Plaintiff's impairments or combination of impairments did not meet or equal the severity of one of the listed impairments. Tr. 14. The ALJ determined that Plaintiff had the RFC to perform light work with the following limitations:

> [T]he claimant can lift twenty pounds occasionally and ten pounds frequently; and sit, stand, and/or walk for six hours in an eight-hour workday with normal breaks. The claimant is limited to no more than occasional climbing of ramps, stairs, ladders, ropes, or scaffolds. The claimant is limited to no more than occasional stooping, kneeling, crouching, and crawling. He is limited to no more than occasional bilateral overhead reaching. With the right, he is limited to no more than frequent handling. The claimant must avoid concentrated exposure to noise. The claimant must avoid concentrated exposure to fumes, odors, dust, gases, and poorly ventilated areas. He can understand and carry out simple instructions. The claim is limited to no more than occasional interaction with the general public.

Tr. 16–17.

At step four, the ALJ concluded that Plaintiff had no past relevant work. Tr. 24.

At step five, after considering Plaintiff's age, education, work experience, and RFC, the Commissioner determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including marker, sorter, and assembler. Tr. 24. Therefore, the Commissioner concluded that Plaintiff was not under a disability as defined by the Social Security Act. Tr. 25.

//

STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds. First, that the ALJ failed to account for all of Plaintiff's limitations in her hypothetical posed to the vocational expert ("VE") at the administrative hearing and subsequent RFC determination. Second, that the ALJ erred in discounting Plaintiff's subjective symptom testimony.

I. **The ALJ's Hypothetical to the VE and RFC Formulation**

Plaintiff claims that the ALJ erred by not including Plaintiff's right arm functional limitations in her hypothetical to the VE. Therefore, according to Plaintiff, the ALJ's RFC and ultimate disability determination were improper because they did not account for the omitted limitation. The ALJ is required to consider the combined effect of all of Plaintiff's impairments,

severe and not severe, on his ability to work. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003); SSR 96-9p. The ALJ's hypothetical questions posed to the VE must account for limitations supported by substantial medical evidence in the record and which the ALJ has accepted as set forth in the RFC. *Cooper v. Sullivan*, 880 F.2d 1152, 1158 n.13 (9th Cir. 1989); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (stating that the ALJ need not include limitations in a hypothetical that the ALJ finds are not credible).

Plaintiff argues that Drs. Richard Alley and Neal Berner opined that Plaintiff was restricted from any twisting or turning of the right wrist. Plaintiff claims that, despite this medical evidence, the ALJ did not include a right wrist limitation in her hypothetical to the VE or in her RFC determination. In response, Defendant argues that the ALJ's RFC determination was supported by substantial evidence in the record that Plaintiff does not challenge and that the ALJ's RFC findings were consistent with Drs. Alley and Berner's opinions.

Dr. Alley indicated that Plaintiff's "handling (gross manipulation)" was limited on the right and "fingering (fine manipulation)" and "feeling (skin receptors)" were unlimited on both sides. Tr. 126–127. When prompted to explain how and why the evidence supports his conclusion regarding Plaintiff's manipulative limitations, Dr. Alley wrote:

> Limited to bi occasional OH reaching due to neck ddd [sic]. Limited to frequent, not constant handling R wrist due to De Quervain's Tendonitis with hx of CTS symptoms in past. Limiting from twisting and turning of wrist.

Tr. 127. Dr. Berner copied verbatim Dr. Alley's statement as written above. Tr. 145.

The ALJ accorded the opinions of Drs. Alley and Berner great weight because they were consistent with other medical opinions and supported by objective medical evidence in the record. Tr. 23. The ALJ noted that Dr. Berner "determined that [Plaintiff] should be

limited . . . to frequent handling on the right." *Id.* As noted above, the ALJ included in her RFC that "[w]ith the right, [Plaintiff] is limited to no more than frequent handling." Tr. 16.

Based on this record, the Court finds that Plaintiff's characterization of the ALJ's treatment of Drs. Alley and Berner's opinions is without factual support. Plaintiff argues that Drs. Alley and Berner opined that Plaintiff "was restricted from any twisting or turning of the right wrist." Pl. Br. 6, ECF 17. The record shows, however, that the doctors opined that Plaintiff was limited to "frequent" but "not constant" handling with the right wrist due to De Quervain's tendonitis. Tr. 126, 145. The ALJ expressly incorporated a limitation of no more than frequent handling with the right extremity in Plaintiff's RFC. Tr. 16. Accordingly, Plaintiff's objection that the ALJ failed to account for Dr. Alley and Berner's statements regarding Plaintiff's right wrist manipulative limitations is without merit.

## II. Plaintiff's Subjective Symptom Testimony

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting his subjective symptom testimony. The ALJ is responsible for determining credibility. *Vasquez*, 572 F.3d at 591. Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm. Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'"); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ engages in two-step analysis to determine credibility: First, the ALJ determines whether there is "objective medical

evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged" and second, if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (internal quotation marks omitted).

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*; *see also Tommasetti*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.") (internal quotation marks omitted).

As the Ninth Circuit explained in *Molina*;

> In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation. For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.] While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating

> capacities that are transferable to a work setting[.] Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

674 F.3d at 1112–13 (internal citations and quotation marks omitted).

At his administrative hearing, Plaintiff testified that he experiences back and neck pain and he has difficulty moving his neck. Tr. 39–40, 45. He testified that he has difficulty raising his arms, suffers from numbness in his arms, and that he drops objects. Tr. 49–51. Plaintiff also stated that he has headaches two to three times per week and that the sinus surgery he underwent in October of 2014 failed to alleviate the frequency or severity of his headaches. Tr. 48. In addition, Plaintiff believes that he cannot work because he has problems getting along with others. Tr. 41–42.

The ALJ gave several reasons for discounting Plaintiff's subjective symptom testimony, finding that Plaintiff's statements were inconsistent with: Plaintiff's daily activities; the medical record; and other reports in the record.

### A.  *Plaintiff's Daily Activities*

The ALJ found that Plaintiff's daily activities were inconsistent with the severity and nature of his symptom testimony. Plaintiff reported that in April of 2012 he was doing odd jobs including mowing his neighbor's lawn. Tr. 18, 41. In December of 2012, he reported chopping and selling firewood for the past five years. Tr. 18, 41, 391. In late 2014, Plaintiff reported that he cared for three young children at home. *Id.* The ALJ concluded that Plaintiff's daily activities evidenced his ability to "engage in a range of activities consistent with the [RFC] finding." Tr. 18.

Plaintiff argues that his daily activities were consistent with his claim of total disability and do not equate to an ability to work. According to Plaintiff, his sporadic odd jobs and brief

periods of childcare are not evidence that he is able to sustain work. As noted above, an ALJ may properly rely on the plaintiff's daily activities where they contradict the plaintiff's other testimony. *Orn*, 495 F.3d at 639. Here, Plaintiff's claimed back and neck pain as well has his alleged limited range of arm movement, arm numbness, and dropping of objects were belied by his testimony that he mowed his neighbor's lawn and chopped and sold firewood. The ALJ rationally interpreted the evidence to conclude that Plaintiff's daily activities contradicted his claim of total disability.

B.   *Objective Medical Evidence*

The ALJ found that objective medical evidence in the record contradicted Plaintiff's symptom testimony. Regarding Plaintiff's claimed lower back and neck pain, the ALJ noted that a CT scan of his spine taken in 2012 showed only minimal to mild degenerative changes. Tr. 339, 357. The ALJ also noted that Plaintiff's 2012 examination was unremarkable and that there had been gaps in care for his lower back and neck pain from 2012 to late 2013. Tr. 19. An examination in March of 2014 showed that Plaintiff "had normal sensation, normal muscle strength in all extremities, and a stable gait." Tr. 20, 463. Further, Plaintiff's neck pain had been managed with conservative treatment and images of his spine taken in September of 2014 showed no significant findings other than mild degenerative changes. *Id.* Plaintiff's September 2014 exam also showed that he had tenderness in his back "mild pain with range of motion, full strength, decreased but not absent sensation, normal reflexes, and a negative straight leg raise test." *Id.* Updated images of his lumbar spine also showed no significant changes with evidence of only mild degenerative changes. *Id.*

Regarding Plaintiff's headaches, the ALJ noted that Plaintiff reported having them at least twice a week in 2012; however, there was a gap in medical care from 2012 to January of

2013. Tr. 20. In 2013 Plaintiff was prescribed hydrocodone for his headaches and reported using marijuana for his pain. *Id.* Dr. Anton Lotman, a neurologist, examined Plaintiff in March of 2012. Tr. 463. The ALJ noted that Dr. Lotman's exam was "remarkable for a lack of significant findings." Tr. 20. The ALJ wrote: "Dr. Lotman diagnosed [Plaintiff] with post-concussion syndrome and migraine headaches. An MRI was unremarkable except for chronic sinus infection. His sinusitis was thought to contribute to his headaches. A CT scan of his brain showed evidence of prior trauma, and a CT angiography was normal." Tr. 20 (internal citations omitted). The ALJ also noted that Plaintiff underwent surgeries in September and October of 2014 to treat his bilateral sinusitis. Plaintiff subsequently reported that his headaches were improving. Tr. 20. At his hearing, Plaintiff testified that he was having one of his headaches and the ALJ noted "yet he had no problem proceeding with the hearing." Tr. 20.

The ALJ also found that Plaintiff's testimony about his pain, numbness, and limited range of movement in his arm was contradicted by the medical record. Plaintiff had reported in September of 2014 that his carpel tunnel had improved with conservative treatment. Tr. 20. Despite suffering from intermittent numbness and tingling in his right arm, hand and fingers, Plaintiff denied any weakness or dropping of objects. *Id.* An exam showed that he had "full strength in his upper extremities, normal reflexes, and decreased but not absent sensation." *Id.* The ALJ concluded that due to his upper extremity impairments, he should be limited to no more than occasional bilateral overhead reaching and no more than frequent handling on the right. Tr. 17.

In response to the ALJ's findings, Plaintiff argues that any gaps in his medical treatment were due to his lack of financial resources. Otherwise, Plaintiff argues in a general fashion that the ALJ cannot reject Plaintiff's testimony about the severity of his symptoms merely because it

is unsupported by objective medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

It was proper for the ALJ to rely on discrepancies between Plaintiff's testimony about the severity of his symptoms and the medical record. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Plaintiff does not identify which portions of his testimony the ALJ rejected, or how those statements, if credited as true, would require the Court to conclude that Plaintiff was disabled. It was also appropriate for the ALJ to consider gaps in Plaintiff's treatment history and the amelioration of his symptoms with only conservative treatment. *Tommasetti*, 553 F.3d at 1040; SSR 16-3p, at 7–9; 20 C.F.R. §§ 404.1529(c)(1)–(3), 416.929(c)(1)–(3). Plaintiff's argument that the gaps in treatment can be explained by a lack of financial resources is unsupported by the record. The citations that he relies on point to treatment notes that do not correspond with the gaps in treatment identified by the ALJ; additionally, some the notes merely state that Plaintiff's insurance did not cover particular pain medications. Tr. 385, 373, 471, 429. In sum, ALJ properly identified the testimony that was not credible and made findings based on specific facts in the record. *Reddick*, 157 F.3d at 722; *Burrell*, 775 F.3d at 1138. Therefore, the ALJ's findings were supported by substantial evidence.

## C.   *Inconsistent Reports in the Record*

The ALJ found that Plaintiff's "credibility [was] diminished by inconsistent reports in the record, and evidence that he seeks care only to bolster his social security claim." Tr. 18. For example, the ALJ noted that Plaintiff denied using alcohol to his psychiatrist but was arrested while intoxicated for domestic violence in 2012. Tr. 18, 367–68. Plaintiff's psychiatrist, Dr. James Martin wrote: "I am somewhat concerned about this man's motivation for getting help. One of the primary reasons I had seen him before was because Social Security had taken him off

his disability claim in October 2011. He had appealed that and apparently in July was denied again. I had not heard from him since until the most recent incident with the current crisis." Tr. 366.

The ALJ also found that Plaintiff had "a history of exaggerating his symptoms in order to obtain benefits." *Id.*

> For instance, at his last hearing he testified he could only walk about five minutes and perform minimal chores, although elsewhere he reported walking/hiking long distances and chopping wood. [Plaintiff] had a poor work history prior to his assault in 2000. The overall evidence suggests the claimant is not motivated to engage in [SGA].
>
> [Plaintiff] was medically advised in 2011 to abstain from the use of all substances, including cannabis. Nonetheless, [Plaintiff] has continued to use cannabis for many years.
>
> The claimant was medically advised by his doctor to exercise. This suggests the claimant is not as physically limited as alleged, or that his limited functioning is self-imposed, not medically advised. In fact, when he complied with recommended diet and exercise, he lost nearly thirty pounds in April 2013.

Tr. 18–19 (internal citations omitted).

Plaintiff disputes the ALJ's reading of the record. He argues that his relapse into alcohol which culminated into domestic violence "does not show that Plaintiff has intentionally concealed or been dishonest about substance abuse." Pl.'s Br. 10, ECF 17. Plaintiff also claims that he was motivated to see Dr. Martin not to obtain benefits, rather, because of the domestic violence incident. Tr. 10, Tr. 364–65. The Court rejects Plaintiff's requests to reweigh the evidence and to adopt his interpretation of the record. Once more, "[w]here the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591. Here, it was rational for the ALJ to interpret Plaintiff's statements about substance abuse and Dr. Martin's report as inconsistent with Plaintiff's testimony.

Plaintiff also argues that there was no evidence of exaggerated symptoms in the record and that it was improper for the ALJ here to consider the findings made by another ALJ in an unfavorable decision on Plaintiff's prior claim. Tr. 18, 111. According to Plaintiff, those findings were not properly part of the record in this case. The Court finds this argument puzzling because the prior ALJ's decision is part of the record. Tr. 103–113. Plaintiff provides no legal support for the proposition that statements from a prior ALJ's decision included in the record should not be considered for the purpose of discounting Plaintiff's subjective symptom testimony.

Lastly Plaintiff argues that the ALJ improperly found that his "limited functioning is self-imposed" based on evidence that Plaintiff sought treatment in order to obtain benefits and had been prescribed exercise. As Defendant correctly points out, "well documented motivation to obtain social security benefits" is a proper basis for discounting a plaintiff's subjective symptom testimony. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). Here, however, Plaintiff's motivation for obtaining benefits was not well documented and the Court agrees with Plaintiff that the ALJ improperly found that Plaintiff's limited functioning was self-imposed. The fact that a provider prescribed exercise to Plaintiff is not inconsistent with Plaintiff's claim of total disability and the ALJ did not find that Plaintiff was malingering. Nevertheless, an ALJ's overall credibility determination may be upheld even if not all of the ALJ's reasons for rejecting a plaintiff's testimony are upheld. *Batson*, 359 F.3d at 1197. "[T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error . . . but it is whether the ALJ's decision remains legally valid , despite such error." *Carmickle*, 533 F.3d at 1162. The Court finds that notwithstanding the ALJ's improper reliance on evidence of motivation, the ALJ otherwise provided clear and convincing reasons supported by substantial evidence in the record to discount Plaintiff's subjective symptom

testimony. Otherwise, all of Plaintiff's limitations were properly accounted for in the ALJ's RFC determination. Therefore, the Court finds that the ALJ's treatment of Plaintiff's testimony was not in error.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is affirmed and this case is dismissed.

IT IS SO ORDERED.

Dated this 26 day of October, 2017

                                                  MARCO A. HERNÁNDEZ
                                                  United States District Judge